**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-02814-MSK

**OLIVER N. HOWELLS,**

    Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

    Defendant.[1]

**OPINION, ORDER, AND JUDGMENT**

**THIS MATTER** comes before the Court on Plaintiff Oliver N. Howells' appeal from the Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33.  Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.     Jurisdiction**

On November 14, 2007, Mr. Howells filed a claim for disability insurance benefits pursuant to Title II.  He asserted that his disability began December 1, 2000.  His claim having been initially denied, Mr. Howells filed a written request for a hearing before an Administrative Law Judge ("ALJ").  This request was granted and a hearing was held on March 30, 2009.

---

[1] Michael J. Astrue was the Commissioner of Social Security at the time Mr. Howells filed his appeal.  Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commissioner of Social Security, effective February 14, 2013.

The ALJ issued a decision in which she determined that Mr. Howells was not disabled. The Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings. After a second hearing, the ALJ again denied Mr. Howells' disability claim. The ALJ determined that Mr. Howells was insured through December 31, 2005 and had two impairments, bipolar disorder and a history of substance abuse, which in combination were severe. The ALJ found that these impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"). She found that Mr. Howells had the Residual Functional Capacity ("RFC") to perform work at any exertion level but had several non-exertional limitations. These included performing only simple, unskilled work not requiring more than three-step instructions, not working in close proximity to co-workers, not functioning as a member of a team, and minimal contact with the general public. The ALJ found that Mr. Howells was unable to perform any of his past relevant work, but that there were jobs in the national economy that Mr. Howells would be able to perform given his age, education, work experience, and RFC.

Mr. Howells requested review of the ALJ's second decision. This request was denied by the Appeals Council, making the ALJ's second decision the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). The appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.    Material Facts**

Having reviewed the record in light of the issues raised, the material facts are as follows. In November 2000, Mr. Howells left his long-term job at ATMEL. The precipitating cause of this departure was Mr. Howells' inability to get along with his supervisors and co-workers.

According to a Supervisor's Termination Report and an Employee Counseling Record, both from November 2000, he was "not a good team player, confrontational, [and an] abusive disruption to any group." It was also noted that he was "very confrontational and loses control" and engaged in "verbal abuse." Mr. Howells testified that, due to a verbal confrontation, he was escorted off the ATMEL property, placed on suspension, and resigned before he could be fired. According to his wife, he attempted to work at a company called Agate soon after he left ATMEL, but was asked to leave that job after only a few days.

After he left ATMEL and Agate, Mr. Howells was self-employed as an antiques dealer. He ran this business with the help of his wife. He stated that he was able visit garage sales, auctions, and flea markets, interact with consignment shops, and price, purchase, and sell antiques. However, he struggled with the bookkeeping required in this business, and relied heavily on his wife for help. Additionally, he continued to have some conflict with consignment shop owners, went on imprudent buying sprees, and was not always able to get out of the house to do business.

Mr. Howells also described limits on his daily activities. He was able to interact with his immediate family, perform household chores, take care of daily hygiene, and occasionally attend church. However, he stated that he did not participate in his old hobbies, like rock collecting, fishing, and camping, nor was he always able to socialize with people when they came over to his house. According to Mr. Howells, his anger and frustration would sometimes limit his ability to go out of the house, interact with other people, and manage his antiques business.

Mr. Howells has a history of treatment for bipolar disorder and manic depression that began around the time he left ATMEL. He was treated by Dr. Rosenthal, a psychiatrist, from 2001 to 2003 and 2007 to 2009. Dr. Rosenthal saw Mr. Howells over two dozen times and

prescribed him various amounts of the following medications: Effexor, Lamictal, Lexapro, Cymbalta, Haldol, Seroquol, Depakote, Zyprexa, Lithium, and Invega.  In a letter from August 2009, Dr. Rosenthal offered an opinion as to Mr. Howells' functional limitations.  He opined that Mr. Howells' mental impairments and symptoms, including agitation, anger, impulsivity, and paranoia, interfered with his functioning on a daily basis from 2001 to 2003.  Dr. Rosenthal stated that "…this functioning would not be acceptable in a work setting…."

The ALJ discounted Dr. Rosenthal's opinion because his "treating notes appeared to support adequate functioning," and the "treatment notes and Doctor's comments" generated after December 31, 2005 were of "limited value."

**III.   Issues Presented**

Mr. Howells raises seven challenges to the Commissioner's decision.  He contends that the ALJ:  (1) did not properly analyze Dr. Rosenthal's opinion; (2) rejected Dr. Rosenthal's opinion without adequate justification; (3) rejected Dr. Ellias' opinion without sufficient justification; (4) failed to consider highly probative evidence regarding Mr. Howells' prior work activities; (5) improperly substituted her opinion for those of the medical experts; (6) erroneously determined that Mr. Howells does not satisfy the requirements of a Listed impairment; and (7) did not adequately consider or account for all of Mr. Howells' mental limitations in the RFC finding.  As the Court finds that Mr. Howells' first and second challenges warrant reversal and remand for further proceedings at Steps 3, 4, and 5 of the sequential disability evaluation analysis, it is unnecessary to address the remaining issues.

**IV.   Standard of Review**

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the

Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

A treating physician's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). An ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted). Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); 20 C.F.R. § 404.1527.

Having considered these factors, an ALJ must give good reasons in the decision for the weight assigned to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). The ALJ is not required to explicitly discuss all the factors outlined in 20 C.F.R. § 404.1527. *Oldham v. Astrue*,

509 F.3d 1254, 1258 (10th Cir. 2007).  However, the reasons the ALJ sets forth must be sufficiently specific to make clear to subsequent reviewers the weight the ALJ gave to the treating source's medical opinions and the reason for that weight.  *Watkins*, 350 F.3d at 1301.

## V.     Discussion

The primary issue, as reflected in several challenges by the Claimant, concerns the ALJ's assessment of Dr. Rosenthal's medical opinions.  The ALJ's decision summarized Dr. Rosenthal's opinion and treatment records, but contains few findings regarding this evidence. The ALJ stated that "[Dr. Rosenthal's] treating notes appear to support adequate functioning," and that "the treatment notes and Doctor's comments after December 31, 2005, are after the date last insured and are of limited value in this decision."

Mr. Howells argues that the ALJ erred by not properly applying the required analytical framework when evaluating Dr. Rosenthal's opinion; in particular that the ALJ did not make specific findings as to why Dr. Rosenthal's opinion was not entitled to controlling weight, failed to assign any weight to Dr. Rosenthal's opinion, and rejected Dr. Rosenthal's opinion without explicitly applying the factors outlined in 20 C.F.R. § 404.1527(c).[2]

The Commissioner responds that the ALJ properly rejected Dr. Rosenthal's opinion because it was not supported by his treatment notes, he did not treat Mr. Howells during the entirety of Mr. Howells' alleged disability period, and his opinion addressed, in part, an issue reserved for the Commissioner.

The Court agrees with the Claimant for the most part.  Dr. Rosenthal opined that Mr. Howells' mental impairments and symptoms, including agitation, anger, impulsivity, and

---

[2] Both Mr. Howells and the Commissioner cite 20 C.F.R. § 404.1527(d) as the section of the Regulations containing the factors used to weigh a medical opinion. However, this statute was slightly modified in 2012, placing those factors in § 404.1527(c).

paranoia, interfered with his daily functioning. According to Dr. Rosenthal, these symptoms and impairments existed from 2001 to 2003. He stated that "…this functioning would not be acceptable in a work setting…."

Were this opinion simply an opinion that the Claimant could not work, the ALJ could properly reject it as falling within the Commissioner's discretion. But this opinion is something more – it includes a diagnosis, observational evaluation, and an assessment as to how Mr. Howells' impairment affected his functioning. This makes the opinion more than just a conclusory statement.

The ALJ's decision does not indicate what weight the ALJ gave Dr. Rosenthal's opinion, nor does the decision indicate why the ALJ gave it such weight. The decision states that: (1) "[t]he treating notes appeared to support adequate functioning"; and (2) the "treatment notes and Doctor's comments" generated after December 31, 2005 are "of limited value". It is not clear what notes the ALJ was referring to, to what degree such notes were inconsistent with the opinion, or how the notes impacted the ALJ's assessment of the opinion. Although contradictory medical evidence can be a legitimate reason for not giving a treating physician's opinion controlling weight or deference, here it is unclear whether there was contradictory medical evidence upon which the ALJ relied and why that evidence undermined Dr. Rosenthal's opinion. *See* 20 U.S.C. § 404.1527(c)(2).

The ALJ's failure to clearly set forth the weight given Dr. Rosenthal's opinion, as well as the failure to tie such weight to specific, valid reasons, leaves the Court unable to understand how, in light of Dr. Rosenthal's opinion, the ALJ determined Mr. Howells' RFC. Such error requires reversal and remand. *See Watkins*, 350 F.3d at 1301.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED**, and the case is **REMANDED** for further proceedings at Step 3, and if appropriate, Steps 4 and 5.  The Clerk shall enter a Judgment in accordance herewith.  Any request for costs or attorney fees shall be made within 14 days of the date of this Opinion, Order, and Judgment.

DATED this 29th day of April, 2013

**BY THE COURT:**

Marcia S. Krieger
United States District Judge